JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

**Filed On 3/3/10**

In re

ALLEN HENRY CHOY, LLC,

    Debtor(s)

Case No. 09-00429-HAR
In Chapter 11 (SB)

MEMORANDUM SUPPORTING CONFIRMATION OF DEBTOR'S PLAN

    1. <u>INTRODUCTION</u>- At the chapter 11 confirmation hearing on March 1, 2010, the court approved the disclosure statement and ruled that it would confirm debtor's plan which makes no payments to general unsecured creditors and wipes out the equity of the pre-bankruptcy members of the limited liability company.

    The new owner and sole member of the reorganized debtor, Catherine Copelin, is the sister of Allen Henry Choy, one of the pre-petition members of the LLC.  She is paying about $425,000 to fund the reorganization.  Allen will continue on post-petition as an employee of the reorganized debtor, but not as a member.

    The bankruptcy was filed on June 29, 2009, listing three members in the schedules: Allen Henry Choy, 60%; Karen Peterson, 20%, and Roselinde Robertson, 20%.  Several years before, all three of these three members pledged their membership shares to Northrim Bank by a Commercial Pledge Agreement dated December 18, 2006.[1]  The pledge was to allow the bank, if there was a default on a Northrim loan to the LLC, to acquire ownership of the three members'

---

[1] Northrim's Exhibits 1 and 2 at the confirmation hearing.  Exhibit 2 is the UCC filing.

shares as an adjunct to gaining control of the liquor license owned by the LLC. Alaska law does not permit a straightforward security interest in a liquor license.[2]

The business was struggling financially in 2008. To keep it afloat, Allen Choy obtained $75,000 from each of two investors, Tommy Michael Briggs and Christopher Winters. Briggs and Winters testified they were unconditionally promised 20% each of the membership shares; i.e., that Choy was going to give Briggs and Winters each a third of his 60% membership. Choy claimed at the confirmation hearing that the transfer was conditional on ABC approval and subject to Northrim's prior pledge (neither Briggs or Winters knew of the pledge and deny that there was an ABC approval condition). The LLC gave K-1 federal income tax statements to both Briggs and Winters for the 2008 tax year showing each as a 10% owner of the LLC.

The LLC retained David Bundy as its bankruptcy attorney. Before a petition was filed in June 2009, Mr. Bundy held a meeting with all the five of acknowledged and purported members (Choy, Peterson, Robertson, Briggs and Winters) to discuss filing a chapter 11 bankruptcy. At the meeting, both Briggs and Winters agreed that a bankruptcy was probably necessary, but both said they did not want their names associated with the filing as members of the LLC. They did not contemplate that they might lose all their ownership or equity in a reorganization. They were just hoping to get some portion of their investment back. Robertson also agreed to the filing.

Currently, the debtor owes almost $1.5 million to Northrim, secured by a first and second deed of trust on the land on which the debtor's business (a bar and motel) is located. Northrim also has a "lien" on the liquor license via the pledge of the shares and on virtually all (or most) of the debtor's personal property (the bar equipment and inventory).

Although there had been an appraisal of the business of $2.35 million (which includes $250,000 for a liquor license and the personal property) as a going concern in November 2006, Northrim agreed to settle its claim for $970,000 – $300,000 in cash and a new $670,000 deed of

---

[2] AS 04.11.670.

MEMORANDUM SUPPORTING
CONFIRMATION OF DEBTOR'S PLAN                                                                    Page 2 of 6

trust for the balance. This is convincing proof that the value of the assets today are less than Northrim's $1.5 million lien. There was undisputed testimony that the bar business was struggling financially due to the downturn in the economy and the prior FMV estimate was now unrealistic.

When Brooks and Winters, now joined by Robertson, learned that they were going to be wiped out by the proposed plan of reorganization, they objected to the plan and filed an adversary against Choy, individually, to protect their asserted ownership interest.[3]

In the court's opinion, the three dissenters have no hope of obtaining an actual recovery from the bankruptcy estate (be it a cash dividend or retention of an equity interest), unless some other party agrees to pay them something to go away. Can they gum up the confirmation by virtue of their membership interests - acknowledged as to Robertson and contested as to Briggs and Winters – so that a plan cannot be confirmed over their objection? Below, I conclude that they cannot.

I want to emphasizes that I found the three dissenters to be credible witnesses (probably more so than Allen Choy). And, I acknowledge their right to "gum up" the plan, if they are legally entitled to in an attempt to force one of the parties to pay something to them. If they were successful in thwarting the plan, however, Northrim would immediately be granted relief from stay and quickly acquire all the assets; there would no longer be a business or unencumbered assets to pay them.

Whether the plan succeeds or fails, most of the creditors and members will come out about the same. If Northrim did foreclose, the Municipality of Anchorage, which has a few secured claims, would still be paid due to its priority lien position. Only Wells Fargo would lose a $10,000 payment that the plan offered to take out its $105,000 secured claim.

---

[3] A09-90041-HAR, Briggs v Choy.

MEMORANDUM SUPPORTING
CONFIRMATION OF DEBTOR'S PLAN                                                                            Page 3 of 6

In short, the three dissenting creditors will lose any value for their equity position either under the plan or if Northrim forecloses on all the assets.

As a condition to consummation of the plan, the new owner has to free up the liquor license from any holds under AS 04.11.360(4). Briggs and Winters may have estopped themselves from claiming that the $75,000 that each of them invested was debt of the LLC.

2. ANALYSIS-

2.1. Was the Debtor Authorized to File the Chapter 11?- It was. Indeed, the three dissenters have never explicitly raised the argument that the filing, itself, was improper, but the question is tangentially at issue.

The state law governing limited liability companies is used to answer this question.[4] The operating agreement for the debtor provides that Allen Choy is the managing member.[5] A meeting of all five of the members/putative members, including Briggs and Winters, was held at which the filing of a bankruptcy was approved. As the managing member, Allen Choy had authority to file the petition.[6] No one objected to him continuing to manage the debtor after the bankruptcy was filed, until the dissenters saw the proposed plan cancelling their interests.

I conclude the filing was valid. To boot, Briggs and Winters should not be able to, on the one hand agree to the bankruptcy, and on the other hand dispute Choy's authority to file it (if, indeed they do make that argument).

2.2. Cramdown of the Equity Interests is Proper in This Case- I found that the debtor met all the applicable requirements for confirmation under 11 USC § 1129(a), except for § 1129(a)(8) which requires that all classes of claims or interests who are impaired must have accepted the

---

[4] In re Orchards Village Investments, LLC, 405 BR 341, 349-51 (Bankr. D. Ore. 2009) [under Oregon law, if a majority of members of an LLC consent to or ratify the filing of a bankruptcy petition, the filing is valid]; In re A-Z Electronics, LLC, 350 BR 886 (Bankr. D. Ida. 2006).

[5] *See*, *Objection to Debtor's First Amended Disclosure Statement*, Docket 73, Exhibit 6, Article 1.7.

[6] AS 10.50.110(b).

MEMORANDUM SUPPORTING
CONFIRMATION OF DEBTOR'S PLAN                                                                Page 4 of 6

plan. In this situation, the debtor was entitled to seek confirmation under the cramdown provisions of § 1129(b).

The plan is exceedingly simple. The secured creditor classes have all either consented to the plan, or are being paid in full (the Municipality). The general unsecured creditor class will receive nothing, and the equity interest of Choy, Petersen, Robertson, Briggs (if any) and Winters (if any) are being wiped out.

These treatments are allowable under the cramdown provisions of 11 USC § 1129(b)(2)(B, C). No class junior to the unsecured creditor class is receiving anything under the plan, and unsecured creditors would not receive more in a chapter 7.[7]

The debtor is entitled to confirm the plan over the objection of Robertson, Briggs and Winters, even assuming each was a pre-petition member of the LLC.[8]

The plan is "fair and equitable" in the real sense as to Briggs and Winters, even assuming they were members of the LLC pre-petition. Their membership interests were encumbered by the prior pledge to Northrim of their interests as a means for Northrim to realize on the liquor license in the event of default. As such, they are not being deprived of any actual value, other than the right to act as a spoiler. The plan should not be frustrated where senior creditors have agreed to a plan that meets their financial interests and allows a business with employees to continue to operate.

The dissenters argue that their membership interests can only be effected by actions in compliance with state law (AS 10.50), and the LLC's operating agreement. But, the federal bankruptcy law trumps these purported rights, and the debtor may impair (wipe out) the membership interests in its plan.[9]

---

[7] 11 USC § 1129(a)(7)(A)(ii).

[8] 7-1129 *Collier on Bankruptcy* ¶ 1129.03[4] [Matthew Bender online ed 2010].

[9] 11 USC § 1123(b)(1).

Cramdown, cancelling the membership interests of all five members, is appropriate in this case.

3.  CONCLUSION- The debtor's straight forward plan is entitled to confirmation. Approval of the ABC board is still a hurdle to consummation of the plan. The approximately $425,000 to be paid by Ms. Copelin will be used to pay priority claims, the Municipality of Anchorage tax liens, and $300,000 to Northrim (which will cap its secured claim at $970,000, and get a $670,000 deed of trust for the balance). Debtor must still contend with any valid "holds" on the liquor license, and some unsecured creditors may still be paid in the process.

DATED: March 3, 2010

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve:
David Bundy, Esq., for debtor
William Artus, Esq., for Robertson, Winters, and Briggs
Dennis Fenerty, Esq., for Northrim Bank
Peter Hallgrimson, Asst. Municipal Attorney
Kay Hill, Asst. US Trustee        D7281
3/3/10

MEMORANDUM SUPPORTING
CONFIRMATION OF DEBTOR'S PLAN                                    Page 6 of 6